IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TONY BARKSDALE, <br> AIS No. 0000z611, <br>   Petitioner, <br> v. <br> JEFFERSON S. DUNN, <br> Commissioner, Alabama Department <br> of Corrections, <br>   Respondent. | CASE NO. 3:08-CV-327-WKW <br> [WO] |

## ORDER DENYING RULE 59(e) MOTION

Before the court is Petitioner's motion, filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the judgment, denying Petitioner a writ of habeas corpus and a certificate of appealability (CoA) (Doc. # 64), and Respondent's response (Doc. # 69). As grounds for his Rule 59(e) motion, Petitioner asserts that the court's Memorandum Opinion and Order contains "manifest errors of law or fact" that must be corrected "to prevent manifest injustice." (Doc. # 64 at 1.) Briefly, Petitioner contends that (1) he received ineffective assistance of counsel (IAC) at both the guilt and penalty phases of trial and (2) the court, in reaching the contrary conclusion that his counsel was constitutionally effective at both phases of trial, incorrectly interpreted the record and disregarded binding precedent.

Petitioner requests the court to reconsider its Memorandum Opinion and Order of December 21, 2018, and grant the relief sought in the petition. In the alternative, Petitioner requests a CoA permitting him to present all claims raised in his 28 U.S.C. § 2254 habeas petition to the U. S. Court of Appeals for the Eleventh Circuit.

For the reasons set forth below, Barksdale is entitled to no relief from the judgment.

## I. BACKGROUND

The facts and circumstances of Barksdale's capital offense and the procedural history of this case, in both the state courts and this court, are set forth in detail in the Memorandum Opinion and Order entered December 21, 2018 (Doc. # 62). In that opinion, the court (1) concluded that the state trial and appellate courts reasonably rejected on the merits myriad claims Petitioner raised on direct appeal and in his Rule 32 proceeding, (2) rejected on the merits after *de novo* review the new claims Petitioner asserted in his pleadings in this court, and (3) concluded that Petitioner was not entitled to a CoA. (Doc. # 62.)

When viewed in the light most favorable to the jury's guilty verdict, the evidence at Petitioner's trial showed that on December 1, 2005, Petitioner and his companions, Jonathan David Garrison and Kevin Hilburn, (1) stole a Ford Taurus motor vehicle in Guntersville, Alabama, (2) attempted to drive this stolen vehicle to

Alexander City, Alabama, (3) wrecked the vehicle near Sylacauga, Alabama, and (4) hitched a ride to Alexander City. Wanting to return to Guntersville that same day, Petitioner, who was armed, indicated he would shoot someone if necessary to get a ride to Guntersville. Thereafter, the trio encountered the driver of a gray Maxima, Julie Rhodes. She agreed to give them a ride across town, but not to Guntersville. Petitioner directed her to drive into a neighborhood and stop. She complied, at which time Petitioner shot her twice. Still alive, Julie Rhodes was pushed out of the car by Petitioner. Petitioner and his companions then drove her vehicle to Guntersville. Julie ultimately died from her gunshot wounds. (Doc. # 62, at 2–7.)

## II. STANDARD OF REVIEW

The only grounds for granting a Rule 59(e) motion in the Eleventh Circuit are newly discovered evidence or manifest errors of law or fact. *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). A Rule 59(e) motion cannot be used to relitigate old matters or to submit argument or evidence that could have been raised prior to entry of judgment. *Jacobs v. Tempur-Pedic Int'l, Inc.,* 626 F.3d 1327, 1344 (11th Cir. 2010) (citing *Arthur*, 500 F.3d at 1343).

# III. ANALYSIS

## A. <u>Ineffective Assistance of Trial Counsel</u>

Barksdale's Rule 59(e) motion is premised on his continuing argument that his trial counsel, Thomas M. Goggans, was ineffective for a multitude of reasons at both the guilt and penalty phases of his trial.[1] While his habeas petition alleged specific instances of ineffective assistance in each trial phase, Barksdale argues, for the first time in his Rule 59(e) motion, that trial counsel was generally ineffective during both phases. Barksdale appears to suggest that the court failed to consider his claim that Goggans's overall performance was ineffective. Because Barksdale did not raise this generic claim of ineffective assistance of counsel in his federal habeas petition, he is entitled to no relief on this claim. Barksdale's other arguments are addressed and rejected below.

### *1. Failure to investigate*

Barksdale asserts that the court erred in concluding that Goggans's investigation in preparation for both the guilt and penalty phases of his trial met the constitutional standard. Barksdale submits that not only was Goggans's

---

[1] Petitioner appears to question the court's use of the term "defense team" in the Memorandum Opinion and Order. The court is cognizant that Goggans, a solo practitioner at the time of Barksdale's trial, was his only trial counsel, as the record clearly reflects. "Defense team" includes the administrative support staff (*e.g.*, secretarial, paralegal, runner, *etc.*) who customarily assist a lawyer, be it a solo practitioner or a group of attorneys in a law firm. In the court's experience, a solo practitioner operating a law practice with no administrative support staff would be an anomaly.

investigation woefully inadequate, it was, for all practical purposes, essentially no investigation.

To support his argument, Barksdale relies on *Strickland* and its progeny, *Williams v. Taylor*, 529 U. S. 362, (2000); *Wiggins v. Smith*, 539 U. S. 510 (2003); and *Rompilla v. Beard*, 545 U. S. 374 (2005). Barksdale also relies on more recent Eleventh Circuit cases cited in his supplemental briefs filed in 2016 (Docs. # 57, 59), *viz.*, *Daniel v. Ala. Dep't of Corr.*, 822 F.3d 1248 (11th Cir. 2016); *Cooper v. Sec'y, Dep't of Corr.*, 646 F.3d 1328 (11th Cir. 2011); *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907 (11th Cir. 2011); and *Ferrell v. Hall*, 640 F.3d 1199 (11th Cir. 2011). He submits that the court failed to consider the Eleventh Circuit's application of *Strickland* and its progeny to claims that factually resemble Petitioner's and in which the Eleventh Circuit held that counsel had rendered ineffective assistance of counsel. Petitioner also points to *State v. Gamble*, 63 So. 3d 707 (Ala. Ct. Crim. App. 2010), a case where counsel offered no mitigating evidence at the penalty phase and was found to be ineffective, and *Ex parte Gissendanner*, ___ So. 3d ___, No. 1160762, 2019 WL 101611 (Ala. Jan. 4, 2019). Barksdale urges that in view of these cases, it should be clear that Goggans, too, was ineffective. However, when analyzing an IAC claim, the court must look to clearly established federal law, "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Eleventh Circuit and Alabama state court cases cited in Barksdale's supplemental briefs, while

informative, are not controlling authority. Evaluating Barksdale's IAC claims, the court was guided primarily by *Strickland*, the landmark 1984 Supreme Court decision that established the standard for evaluating an IAC claim. *Strickland* was the controlling case at the time of Barksdale's trial in 1996, and *Strickland* remains the gold standard for measuring IAC claims. The Eleventh Circuit decisions that have followed in the wake of *Strickland* did not, and of course cannot, evolve or modify the *Strickland* standard.

Contrary to Barksdale's assertion, Goggans did conduct a pre-trial investigation. In addition to obtaining information from Barksdale, Goggans also talked to Barksdale's mother, Mary Archer, as summarized in the court's Memorandum Opinion and Order (Doc. # 62, at 169). However, at that time, Ms. Archer was uncooperative. Goggans had trouble keeping her on the telephone; she was of little, if any, assistance to Goggans. She provided Goggans with virtually none of the useful information she disclosed at Barksdale's Rule 32 hearing. (*See* Doc. # 62 at 171–76.)

Goggans also spoke with Petitioner's father, who likewise was not a great source of useful information about Barksdale. Petitioner's father simply told him that Barksdale had a pattern of lying as a means of getting himself out of trouble. Based on the telephone conversations Goggans had with Barksdale's father, Goggans concluded there was no reason for Barksdale's father to testify at either

6

phase of Barksdale's trial. (Doc. # 62, at 170.)  Further, Barksdale's father disclosed no information to Goggans that opened any leads to the discovery of mitigating evidence.

Barksdale, too, provided Goggans with little useful information to assist Goggans in developing a strong mitigating case.  For example, he never told Goggans that he had a medical or mental health condition and denied any history of either condition.  Barksdale also told Goggans that he had a good relationship with his family and said he recalled no significant events that adversely affected him during his adolescent years.  Barksdale informed Goggans that he had used marijuana and alcohol daily since age fourteen, but he did not suggest that the use of these substances might have resulted in a mental disease or defect.  (Doc. # 62, at 170–71.)

Barksdale also failed to advise Goggans of his relationship with the Maxwell Johnson family and that (1) he and Johnson's son were friends in junior high school and played basketball together, (2) he had lived with the Maxwell Johnson family while in school in 1987–89, and (3) Maxwell Johnson became sort of a surrogate father to him.  Barksdale provided Goggans with no information to put Goggans on notice of Maxwell Johnson's existence; thus, Goggans had no knowledge of Johnson at the time he conducted his pre-trial investigation.  (*See* Doc. # 62, at 182.)

Goggans conducted an investigation for mitigating evidence prior to Barksdale's trial but discovered little that was helpful and much that was harmful. Goggans's investigation was not deficient; the sources to which he turned for mitigating evidence or possible leads to mitigating evidence unfortunately did not result in much mitigating evidence at the time. Barksdale's claim that Goggans was ineffective for failure to investigate rises or falls based on the *Strickland* standard. When Goggans's performance as to his investigation is measured by *Strickland*, his performance passes constitutional muster, for all the reasons detailed in the Memorandum Opinion and Order (Doc. # 62).

## 2. *Ineffectiveness During the Guilt Phase*

Barksdale submits this court erred in rejecting his claim that Goggans was ineffective during the guilt phase of his trial because Goggans failed to show that the victim's murder was accidental and failed to adequately cross-examine prosecution witness Jonathon David Garrison. The court addressed at length these same two claims in the Memorandum Opinion and Order, explaining why these claims raised in his federal habeas petition were without merit. (*See* Doc. # 62 at 132–46, 147–62.)

Barksdale presents no newly discovered evidence to support these claims of ineffective assistance, and he has not shown that the court's reasoning for rejecting these claims of ineffective assistance was attributable to any manifest errors of law

8

or fact.[2]  In short, the arguments Barksdale makes in his Rule 59(e) motion in respect to these ineffective-assistance claims are nothing more than rehashing the same arguments he made in support of these claims in his habeas petition.  Barksdale is entitled to no relief on these claims as he is attempting to relitigate old matters in this Rule 59(e) motion.  *See Arthur*, 500 F.3d at 1343 ("A Rule 59(e) motion cannot be used to relitigate old matters, raise new argument or present evidence that could have been raised prior to the entry of judgment.").

### 3. *Ineffectiveness During the Penalty Phase*

#### a. **Deficient performance**

Barksdale rehashes his argument that Goggans's performance was deficient during the penalty phase.  He points to Goggans's stipulation that Barksdale had been convicted of a prior crime of violence, an armed robbery in Virginia, when he was sixteen years old.  Barksdale also argues that Goggans failed to humanize him to the jury and that, during closing argument, Goggans obliquely and improperly invoked Biblical scripture by referring to Barksdale as "the least of us."

Each of these claims of Goggans's alleged ineffectiveness is addressed in the Memorandum Opinion and Order.  First, it was objectively reasonable for Mr.

---

[2] Barksdale correctly notes the court's error in stating that Peterman was a prosecution witness, when, in fact, he was a defense witness.  However, the court's misstatement as to Peterman has no impact on the court's evaluation of Peterman's testimony or on the court's conclusion that Barksdale presented no evidence that the gun accidentally discharged twice.  Regardless of label, Peterman's testimony speaks for itself.

9

Goggans to conclude, after he had investigated the details of the Virginia conviction, that having the jury hear testimony from the victim, Oscar Cervantes, about the robbery was not a wise course of action and that a stipulation would be less damaging to Barksdale. (*See* Doc. # 62, at 232–38.) Strategic decisions made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U. S. at 690.

Second, as to Barksdale's argument that Goggans was ineffective for failing to humanize him to the jury, Barksdale overlooks the fact that at the time of his trial in 1996, Goggans had no knowledge of the information that surfaced during Barksdale's Rule 32 evidentiary hearing about (1) Barksdale's alcoholic mother, who also used drugs frequently[3], and Barksdale's violent, abusive father, indicating that Barksdale grew up in a dysfunctional family, (2) his living with the Maxwell Johnson family for a period of time when he was in junior high school, and (3) Maxwell Johnson having become somewhat of a surrogate father to him. This information would have been useful to humanize Barksdale, but Goggans was unaware of it. As detailed *supra*, neither Barksdale's parents nor Barksdale provided

---

[3] Barksdale points out that at his Rule 32 hearing, his mother testified that the reason she did not go to court with Barksdale in Virginia was that: "I was stoned. I was high and didn't know about it. . . . I mean, you know, somebody again could have told me about it and I just forgot. I stayed high a lot." (Doc. # 64, at 20 n.15.) Barksdale fails to explain how his mother, in this condition, could have been of any help whatsoever at the time of trial.

10

Goggans with this information or much else that Goggans could have used in developing mitigating evidence.

Had Goggans known (1) of Mary Archer's extensive drug and alcohol use, (2) that Barksdale's father also was prone to drunken behavior and violent, abusive outbursts, (3) of Barker's alleged abuse to which Barksdale's father subjected his mother, and (4) that Barksdale grew up in an arguably dysfunctional family setting, he might have used this information to develop mitigating evidence. Barksdale knew all this, but makes no suggestion he ever disclosed it to Goggans. This information only surfaced post-trial during Barksdale's Rule 32 hearing.

"[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla*, 545 U. S. at 382–83; *Everett v. Sec., Fla. Dep't of Corr.*, 779 F.3d 1212, 1250 (11th Cir. 2015). Given what Goggans knew prior to Barksdale's trial, his performance was not deficient. And this court already has rejected Barksdale's claim that his attorney failed to investigate and present mitigating evidence (Doc. # 62, at 185–213), and Barksdale has not shown that this analysis contains any manifest errors of law or fact.[4]

---

[4] Goggans testified at the Rule 32 hearing that, based on his conversations with Barksdale's mother and father, they would have been risky witnesses. (17 SCR 144.) For that reason, he elected not to call them at trial, an objectively reasonable decision he made after his investigative

11

Third, the cases on which Barksdale relies to argue that Goggans was ineffective during closing argument by describing Barksdale as one of "the least of us" — *Romine v. Head*, 253 F.3d 1349, 1368 (11th Cir. 2001); *Fontenot v. State*, 881 P.2d 69, 85 (Okla. 1994); *Long v. State*, 883 P.2d 167, 177 (Okla. 1994) — do not entitle him to relief for two reasons. Those cases concern a *prosecutor's* reference to biblical scripture during closing argument and say nothing about defense counsel's reference to scripture in order to evoke the jury's sympathy. Additionally, the cases are not Supreme Court decisions. Barksdale has not shown that the state court's determination that counsel's actions were objectively reasonable in referring to scripture during closing argument was contrary to or an unreasonable application of Supreme Court authority. *See* 28 U.S.C. § 2254(d); (Doc. # 62, at 216–18.) Barksdale failed to establish that counsel's performance was deficient and that he was prejudiced by counsel's penalty-phase closing argument when he referred to Barksdale as "the least of us." (*See* Doc. # 62, at 215–18.) And, in his present filing, Barksdale has not shown that the court's analysis of this IAC claim contains a manifest error of law or fact.

---

discussions with them. Even so, Barksdale criticizes Goggans for not encouraging them to attend his trial, implying that Goggans was ineffective by that conduct. This argument is a non-starter because (1) Barksdale cites no authority for this speculative proposition; (2) Barksdale ignores his mother's Rule 32 hearing testimony that she could not afford to fly to Alabama to attend Barksdale's trial (17 SCR 230); and (3) even if Barksdale's parents had attended Barksdale's trial as spectators, it is sheer speculation that the jury would have known about their attendance and/or that it would have made any difference to the jury.

### b. Prejudice

Barksdale also recycles his argument that he was prejudiced in numerous respects by Goggans's deficient performance during the trial's penalty phase. These claims of prejudice were thoroughly addressed and rejected in the court's Memorandum Opinion and Order. (*See* Doc. # 62 at 203–13, 226–30, 231–41.) In the retelling, the claims are still meritless. *See Arthur*, 500 F.3d at 1343.

#### *4. The state court's resolution of Barksdale's IAC claims*

Barksdale is not entitled to relief on his repeated arguments that the state court's resolution of his IAC claims was objectively unreasonable, procedurally improper, and entitled to no deference. Here, Barksdale focuses on the Rule 32 court's order denying his Rule 32 petition, arguing that it impermissibly adopted *verbatim* the prosecutor's proposed order.

This claim, as well as others that pointed to the Rule 32 court's alleged errors of state law, was rejected. As to these claims, Barksdale did not "furnish an arguable basis for federal habeas corpus relief." (Doc. # 62, at 40.)

### B. **Certificate of Appealability (CoA)**

If Barksdale's Rule 59(e) motion is denied, he requests, in the alternative, that the court issue a CoA permitting him to proceed with these same claims on appeal. (Doc. # 64, at 35.)

In Section VIII. of the Memorandum Opinion and Order, the court explained the requirements necessary for a petitioner to be entitled to a CoA on some or all issues. (*See* Doc. # 62, at 313–16.) Barksdale's Rule 59(e) motion does not establish any reason why he is entitled to a CoA on any issue raised in his habeas petition.

## IV. CONCLUSION

For the reasons stated above, Barksdale is not entitled to relief on his Rule 59(e) motion. Based on consideration of the arguments made in Barksdale's Rule 59(e) motion and Respondent's response, it is ORDERED as follows:

1. Petitioner's Rule 59(e) motion to reconsider, alter, or amend judgment (Doc. # 64) is DENIED.

2. Petitioner's request for a Certificate of Appealability from the Memorandum Opinion and Order entered on December 21, 2018 (Doc. # 62) and from the denial of his Rule 59(e) motion (Doc. # 64) is DENIED.

DONE this 11th day of February, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE